UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                                 :

CHELA CRANSHAW,                                 :       Civil Action No.

                                    Plaintiff,         :

            -against-                        :       **COMPLAINT**

                                                                     :       (Jury Trial Demanded)

OLIVER THORAL and AXA REAL ESTATE
INVESTMENT MANAGERS US, LLC
                                                                     :

                                  Defendants.  :
------------------------------------------------------------------X

     Plaintiff, CHELA CRANSHAW (hereinafter referred to as "Plaintiff" or "Cranshaw"), as and set forth in her Complaint (the "Complaint") against Defendants, AXA REAL ESTATE INVESTMENT MANAGERS US, LLC ("hereinafter referred to as AXA"), and OLIVER THORAL ("hereinafter referred to as THORAL"), sets forth and alleges as follows:

### JURISDICTION AND VENUE

     1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 in that the action, involves federal questions, because the causes of action asserted herein arise in part under Title VII of the Civil Rights Act of 1964 (The Pregnancy Discrimination Act), as amended 42 U.S.C. 200e (k) et. Seq. ("Title VII") and the Americans with Disabilities Act ("ADA"). This Court has jurisdiction over the related state law claims herein asserted pursuant to 28 U.S.C. §1367, *Gibb*, 38 U.S. 715

1

(1966), and the laws of the State of New York and City of New York, seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff suffered as a result of being discriminated against, retaliated against and unlawfully terminated by Plaintiff's former employer on the basis disability and/or perceived disability, and in accordance with the applicable principles of pendant jurisdiction.

2.  Plaintiff further complains pursuant to the laws of the State of New York and the New York City Administrative Code, seeking damages to redress the injuries Plaintiff has suffered as a result of being discriminated against, and conductively and actually discharged by Plaintiff's former employer on the basis of sex/pregnancy, childbirth, and/or related medical conditions.

3.  Venue is proper in the Southern District of New York under 28 U.S.C. 1391 (b)-(c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the Southern District of New York.

## JURY DEMAND

4.  Plaintiff demands a trial by jury on all issues properly triable thereby.

## PARTIES

5. At all times hereinafter mentioned, Plaintiff Cranshaw is an individual woman residing in the State of New York in Kings County.
6. Upon information and belief, and at all times hereinafter mentioned, Defendant AXA was and is a Foreign Limited Liability Company which is authorized to

conduct business in the State of New York. Defendant AXA is located and operated at 850 Third Avenue, Suite 13F, New York, N.Y. 10022.

7. During all relevant times, Defendant AXA was Plaintiff's employer within the meaning of all applicable statutes.

8. Upon information and belief and at all times hereinafter mentioned, Defendant THORAL was and is a supervising employee with Defendant AXA.

9. At all times material THORAL directed and controlled the daily work activities of Plaintiff.

10. At all times material, the aforementioned Defendant THORAL maintained supervisory authority over Plaintiff Wolf.

11. THORAL had authority to hire and fire AXA employees.

## FACTS

12. This case involves gender discrimination, disability discrimination, hostile work environment, and retaliation of Plaintiff Cranshaw by Defendants.

13. Plaintiff began working for Defendant AXA as an Office Manager/ PA to Head of the Americas.

14. In or around November of 2015, Plaintiff reported financial improprieties which she uncovered in the spending reports of one of Defendant's AXA senior level employees. Plaintiff immediately notified her supervisor Defendant THORAL, regarding her discovery of possible unlawful conduct.

15. Defendant THORAL, merely instructed Plaintiff to forget about any possible wrongdoing, stating that the employee in question "makes a lot of money."

16. In the months that followed, Plaintiff brought further evidence of the financial misconduct to THORAL'S attention on at least two occasions. Plaintiff also reported the activity to Human Resources. No action was taken.

17. On or about July 1, 2016, Plaintiff informed her office, including Defendant THORAL, that she was pregnant with twins.

18. While the reaction from Plaintiff's coworkers was overwhelmingly positive, THORAL was perturbed by Plaintiff's announcement and made no attempts to hide his displeasure.

19. Immediately after Plaintiff's pregnancy announcement, THORAL began intensely scrutinizing Plaintiff's work, micromanaging her daily activities, and falsely accusing her of professional incompetence. However, at all times prior, Plaintiff received satisfactory performance reviews.

20. In the weeks following Plaintiff's pregnancy announcement, Plaintiff incurred numerous pregnancy-related medical complications which tragically culminated in the miscarriage of Plaintiff's twins.

21. On or about August 29, 2016, due to medical complications stemming from Plaintiff's unfathomable loss, Plaintiff was forced to undergo a surgical procedure.

22. In or around September of 2016, Plaintiff returned to work and met with THORAL to catch up on what she had missed during her time away. During their meeting, Plaintiff informed THORAL that, despite her tragic loss, she and her husband intended to continue trying to conceive a child.

23. In response, THORAL asked Plaintiff "Are you sure that is something you want to do now, it might not be good for your career…..this is a demanding business."

24. THORAL'S response was clearly an attempt to unlawfully dissuade Plaintiff from pursuing any further attempts to conceive a child by implying that such a pursuit would adversely affect her professionally standing with Defendant AXA.

25. After being informed of her intent to once again conceive a child, THORAL began unlawfully harassing Plaintiff in retaliation and subjecting her to unnecessary and unprofessional treatment.

26. For example, on multiple occasions, THORAL verbally berated Plaintiff in front of her coworkers for no apparent reason, often calling her work careless and lambasting her as "imbecilic."

27. On several occasions, Defendant THORAL would blame Plaintiff for things unrelated to her actual work duties, such as when he excoriated her in public due to his unhappiness with the type of paper things were printed on. Plaintiff had no control over the company's paper supply and THORAL was aware of this.

28. In the weeks that followed, THORAL began threatening Plaintiff's job security, often times making sure to levy such threats in the company of Plaintiff's coworkers, in attempts to unlawfully retaliate against Plaintiff and prevent her from plans to conceive a child.

29. Defendant THORAL began inventing arbitrary reasons to castigate Plaintiff in the office.

30. For example, in or around September of 2016, Plaintiff put in a request for Paid Time Off (PTO), to take place in the month of October. It was standard operating

procedure for employees similarly situated to have their PTO request approved unless such a request directly conflicted with a work project. Plaintiff's request did not conflict with any projects or due-dates. Plaintiff then booked round-trip tickets to visit her family in Miami.

31. Immediately after informing THORAL that she had purchased tickets for travel to Miami, THORAL verbally berated Plaintiff in front of her coworkers because she had booked travel without his permission and, without checking to see if her plans actually conflicted with her work, denied Plaintiff PTO request. THORAL claimed it was against policy to book travel prior to PTO being approved. Then, with the entire office watching, THORAL berated Plaintiff. THORAL then forced Plaintiff to sit at her desk and call the airline to cancel her flight she had just booked.

32. A few minutes after humiliating Plaintiff and forcing her to publicly cancel her travel plans, THORAL capriciously and inexplicably approved Plaintiff's PTO request.

33. This retaliatory behavior and hostility in the work environment continued over the following months.

34. Plaintiff availed herself of Defendant AXA'S company procedures by reporting THORAL'S harassment and retaliation to Human Resources but they were unreceptive to her complaint. No remedial or corrective action was taken by Defendant's.

35. Defendant THORAL then began to physically intimidate Plaintiff, repeatedly slamming his closed fist upon office furniture while yelling at Plaintiff.

36. Defendant THORAL'S tirades were often directed as aspects of Defendant AXA'S workflow that had nothing to do with Plaintiff's job function.

37. On multiple occasions, Defendant THORAL would set deadlines for Plaintiff, only to change such deadlines at the last minute, without explanation, thus ensuring Plaintiff could not complete the work on time. THORAL would also knowingly withhold vital information from Plaintiff and refuse to answer relevant questions about her work.

38. In or around October of 2016, Plaintiff once again reported THORAL'S unlawful harassment to ERICA BLIEL (herein "BLIEL") in the Human Resources Department. BLIEL told Plaintiff that it was a "cultural issue," and offered no further explanation or willingness to investigate Plaintiff's complaints of harassment or retaliation.

39. On or about November 2, 2016, Defendants issued Plaintiff an unfair quarterly review which contained numerous fabricated work-related issues, along with a warning letter of reprimand which contained other false allegations. Plaintiff was required to sign the letter, which she did despite her protestations to its content, and agreed to improve her performance.

40. On or about November 3, 2016, Plaintiff arrived at work 14 minutes late due to her train being delayed. THORAL once again castigated her in front of her entire office and screamed at her stating that if she were ever late again, for any reason, she would be fired.

41. Everyday thereafter, Plaintiff arrived at work by 8:40 AM or earlier without putting in the extra time to receive overtime.

42. On or about November 3, 2016, Plaintiff followed up with BLIEL regarding her complaints. She was told that "we have to keep that separate [from the complaint regarding financial improprieties], and we allowed you the time off you had requested." When Plaintiff explained that she was referring to the harassment that she had been subjected to after her discussion regarding her pregnancy, HR said they would "look into it."

43. On or about November 8, 2016, Plaintiff submitted a note from her doctor requesting medical leave due to complications from her miscarriage.

44. On or about November 9, 2016, HR informed Plaintiff that she should apply for FMLA leave to be effective November 18, 2016.

45. On or about November 13, 2016, Plaintiff spoke to THORAL regarding her impending FMLA leave. His ominous response was, "if you are out, then you are out."

46. Plaintiff then spoke with the rest of her staff regarding her duties and offered to train any personnel people that would be replacing her during her leave.

47. On or about November 16, 2016, Plaintiff was unlawfully terminated from her duties with Defendant AXA in retaliation for reporting unlawful harassment and retaliation by her superiors, her medical complications due to her pregnancy, and her future plans to get pregnant while working for Defendants.

48. Due to Plaintiff's termination and subsequent lack of medical insurance, Defendant AXA forced Plaintiff to cancel her scheduled medical treatment on November 21, 2016.

49. Plaintiff's COBRA medical coverage was not properly transferred because HR had terminated Plaintiff's coverage but had not given her the proper release within the required 15-day window.

50. Plaintiff has still been unable to receive the medical treatment she requires.

51. As a result of Defendants' harassment, discrimination, retaliation, and all-around intolerable treatment, Plaintiff suffered and continues to suffer from anxiety and severe emotional distress.

52. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

53. Defendant THORAL abused his supervisory authority with the conduct described herein.

54. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all Defendants jointly and severally.

## AS AND FOR A FIRST CAUSE OF ACTION
## COMPENSATORY DAMAGES UNDER THE FMLA 29 U.S.C. §2617 (a)

55. Plaintiff repeats, and realleges each and every allegation made in the above paragraphs of this compliant.

56. Plaintiff is informed and believes, and on that basis alleges Defendant AXA qualifies as an "employer" as that term is defined in the FMLA, 29 U.S.C. § 2611(4), and that Plaintiff is an "eligible employee" as that term is defined in the FMLA, 29 U.S.C. § 2611 (2).

57. Plaintiff is informed and believes, and on that basis alleges, that there was an "entitlement to leave" as defined in the FMLA, 29 U.S.C. § 2612(1), and Plaintiff was denied her entitlement to leave as prescribed in FMLA.

58. Plaintiff was entitled to restoration to her position as described in the FMLA, 29 U.S.C § 2614(1), and was denied restoration to the same or equivalent position as prescribed in the FMLA.

59. As a result of Plaintiff's termination, Plaintiff has incurred, and is now incurring a loss of wages and continuing medical expenses, all within the meaning of the FMLA 29 U.S.C. § 2617(a). These costs include, without limitation, lost wages and medical expenses during Plaintiff's leave of absence, back pay from the effective date of termination, medical expenses from the date of termination, lost employment benefits from the date of termination, the loss of front pay as of the date of this complaint, and any interest on the amount thereon as included as provided in the FMLA, 29 U.S.C § 2617.

**AS AND FOR A SECOND CAUSE OF ACTION
DISCRIMINATION UNDER TITLE VII
(Not Against Individual Defendants)**

60. Plaintiff repeats, and realleges each and every allegation made in the above paragraphs of this complaint.

61. Title VII states in relevant part as follows:

    (a) Employer practices:

    It shall be an unlawful employment practice for an employer:

    (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

62. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex.

63. As amended, section 701 of Title VII subsection (k) reads in relevant part: 701 of the Civil Rights Act of 1964 is amended by adding at the end thereof the following new subsection: (k) The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 703(h) of this title shall be interpreted to permit otherwise.

64. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. · 2000e et seq., by terminating and otherwise discriminating against Plaintiff as set forth herein on account of Plaintiff's (sex) pregnancy.

**AS A THIRD CAUSE OF ACTION
FOR DISCRIMINATION UNDER TITLE VII
(Not Against Individual Defendants)**

65. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

66. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. · 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

67. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. · 2000e seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

**AS A FOURTH CAUSE OF ACTION
FOR DISCRIMINATION
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**

68. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

69. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

70. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(a) by creating/maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff as set forth herein.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

71. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

72. The New York City Administrative Code Title 8, §8-107(l)(e) provides that it shall be unlawful discriminatory practice: "For an employer… to discharge ... or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter..."

13

73. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(e) by discriminating against the Plaintiff because of Plaintiffs opposition to the unlawful employment practices of Plaintiffs employer.

### AS A SIXTH CAUSE OF ACTION
### FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

74. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

75. New York City Administrative Code Title 8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

76. Defendants violated the section cited herein as set forth.

### AS A SEVENTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE

77. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

78. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel;

14

or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

79. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

### AS AN EIGHTH CAUSE OF ACTION
### FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

80. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

81. New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

    a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

    (1) the employee or agent exercised managerial or supervisory responsibility; or

    (2) the employer knew of the employee's or agent's discriminatory conduct, and

15

acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

(3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

82. Defendants violated the section cited herein as set forth.

### AS A NINTH CAUSE OF ACTION FOR DISCRIMINATION UNDER STATE LAW

83. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

84. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff as set forth herein.

85. Plaintiff hereby make a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

## AS A TENTH CAUSE OF ACTION
## FOR DISCRIMINATION
## UNDER STATE LAW

86. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

87. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

    For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

88. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff s opposition to the unlawful employment practices of Plaintiff s employer.

## AS AN ELEVENTH CAUSE OF ACTION FOR
## DISCRIMINATION UNDER STATE LAW

89. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

90. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

    "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

91. Defendants engaged in an unlawful discriminatory practice in violation of New York

17

State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

92.

### AS A TWELFTH CAUSE OF ACTION<br>FOR DISCRIMINATION UNDER<br>THE AMERICANS WITH DISABILITIES ACT<br>(not against individual Defendants)

99. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

100. Plaintiff claims Defendants violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

101. SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

102. Defendants violated the above-mentioned complaints and Plaintiff suffered numerous damages as a result.

### AS A THIRTEENTH CAUSE OF ACTION<br>FOR RETALIATION UNDER<br>THE AMERICANS WITH DISABILITIES ACT

**(not against individual Defendants)**

103. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

104. SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

105. Defendants violated the above and Plaintiff suffered numerous damages as a resul

**JURY REQUEST**

Plaintiff requests a jury trial on all issues to be tried.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants jointly and severally for all available damages including but not limited to emotional distress, lost wages, back pay, front pay, punitive damages, statutory damages, attorney's fees, costs, medical expenses, interest and all other damages as are just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York

October 5, 2018

                                        DEREK SMITH LAW GROUP, PLLC

                                        By: _____/s/_____
                                                      Paul Liggieri, Esq.
                                    One Penn Plaza, Suite 4905
                                        New York, N.Y. 10119
                                                (212) 587-0760
                                            *Attorneys for Plaintiff*